IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Zita L. Weinshienk

Civil Action No.  03-cv-2038-ZLW-PAC

RONG HUA OU,

      Petitioner,

v.

TOM RIDGE, Secretary,
United States Department of Homeland Security,
JOHN ASHCROFT, Attorney General,
United States Department of Justice,
MICHAEL COMFORT, District Director,
United States Citizenship and Immigration Services,
DOUGLAS MAURER, District Director,
United States Immigration and Customs Enforcement, and
any other person having said Petitioner in custody,

      Respondents.

_____

MEMORANDUM OPINION AND ORDER
_____

Jurisdiction in this matter before the Court is pursuant to 28 U.S.C. §§ 1361

(mandamus) and 2241 (habeas corpus).[1]  On October 24, 2003, the Court held an

initial hearing on Petitioner's Verified Petition For A Writ Of Habeas Corpus Pursuant

To 28 U.S.C. § 2241, Petition For A Writ Of Mandamus Pursuant To 28 U.S.C. § 1361,

And A Complaint For Declaratory And Injuctive [sic] Relief (Petition).  The Court

ordered the parties to file additional briefs on several issues.  The parties have

_____

[1]The Court notes that the propriety of jurisdiction in this matter is a subject of dispute between
the parties.

submitted their briefs, and the Court has considered fully the briefs, the statements and arguments of counsel, and all exhibits.  For the reasons stated below, the Court grants the Petition.

Petitioner Rong Hua Ou (Petitioner) is a citizen of the People's Republic of China.  He arrived in the United States on or about February 26, 1992, allegedly bearing a fraudulent nonimmigrant visa.  Initially, Petitioner did not claim that he had been persecuted in China.  The Immigration and Naturalization Service (INS), now known as the United States Citizenship and Immigration Services (CIS), deferred inspection and paroled Petitioner into the United States on March 25, 1992.  On March 30, 1992, Petitioner filed an application for asylum based on alleged persecution in China for involvement in the Pro-Democracy Movement.

Petitioner's initial asylum application was terminated and deemed abandoned on September 25, 1997, after Petitioner failed to appear for a scheduled interview.  On November 19, 1997, Petitioner filed a new application for asylum.  On November 5, 1999, Petitioner appeared before an Immigration Judge who denied the asylum application as well as Petitioner's request for withholding of removal and for relief under the U.N. Convention Against Torture.  The Immigration Judge ordered Petitioner removed from the United States to the People's Republic of China.

Petitioner appealed the removal order to the Board of Immigration Appeals (BIA).  While the appeal was pending, Petitioner's employer filed a labor certification application, which the Department of Labor approved on January 31, 2002.  On June

21, 2002, Petitioner's employer filed an Immigrant Petition for Alien Worker with the INS.

On September 27, 2002, the BIA affirmed the removal order, and the INS thereafter approved the Immigrant Petition for Alien Worker.  On October 28, 2002, Petitioner filed an application with the INS pursuant to 8 U.S.C. § 1255(i) (Section 1255(i))[2] to adjust to permanent resident status (I-485 Application) based on the approved labor certification application and approved Immigrant Petition for Alien Worker.  Section 1255(i) permits an alien to adjust status if the alien meets certain enumerated requirements.[3]

On November 6, 2002, Petitioner filed a Motion to Reopen or Motion to Reconsider with the BIA based on Petitioner's I-485 Application.  The BIA denied the motion to reopen/reconsider on December 4, 2002, on the ground that because Petitioner was an arriving alien in removal proceedings, he was unable to adjust his status pursuant to 8 C.F.R. § 245.1(c)(8) (Regulation 245.1(c)(8)).  Regulation 245.1(c)(8) provides that an arriving alien in removal proceedings is not eligible to adjust status to that of lawful permanent resident pursuant to Section 1255.

Petitioner was arrested for driving under suspension and with no proof of insurance on May 19, 2003.  United States Immigration and Customs Enforcement

---

[2]Section 1255 is also known as Section 245 of the Immigration and Nationality Act (INA), 66 Stat. 163, as amended.  For clarity, the Court cites to statutory sections rather than the sections of the INA.

[3]8 U.S.C. § 1255(i)(1999 & Supp. 2003).

(ICE) placed a detainer on Petitioner and took him into custody for purposes of removal.

A month later, on June 12, 2003, Petitioner requested a Stay of Deportation/Removal from ICE pending the adjudication of his I-485 Application. The CIS returned the I-485 Application to Petitioner, stating that the CIS lacked jurisdiction to adjudicate it because the BIA had ordered removal, and denied Petitioner's Motion to Reopen. The ICE then denied Petitioner's request for a Stay of Deportation/Removal. On July 24, 2003, the CIS denied the I-485 Application based on Regulation 245.1(c)(8). Petitioner filed the present Petition on October 15, 2003.

Under 28 U.S.C. § 2241(c)(3), the Court may issue a writ of habeas corpus when an individual is "in custody in violation of the law or treaties of the United States."[4] This jurisdiction extends to habeas corpus petitions that challenge a failure to exercise executive discretion authorized by law where the failure involves questions of law that arise in the context of eligibility for discretionary relief.[5] Respondents contest the Court's habeas corpus jurisdiction on the grounds that the Petition is a *de facto* request for direct review of the removal order and, alternatively, that jurisdiction is stripped by statute.

Respondents argue that Petitioner's due process challenge to the denial of his I-485 application is actually a challenge to the BIA's discretionary decision to deny his Motion to Reopen Petitioner's appeal of the final removal order. As such, Respondents

---

[4]28 U.S.C. § 2241(c)(3)(1994).

[5]I.N.S. v. St. Cyr, 533 U.S. 289, 307-08 (2001).

argue, it is in fact a request for direct review of the final order of removal over which the circuit courts have exclusive jurisdiction.[6]  Respondents reach this conclusion by noting that, without reopening his case and terminating the final order of removal, any adjustment of status would have no practical effect because Petitioner would be subject to a prior final order of removal.

Respondents' argument is misplaced for two reasons.  First, the CIS refused Petitioner's I-485 Application in July 2003, over seven months after the BIA's denial of the Motion To Reopen and the start of Petitioner's 30-day direct appeal period.[7] Therefore, the matter could not have been included in a direct review of the removal order if Petitioner had filed an appeal in the circuit court because the denial of the I-485 Application was not part of the removal proceedings.[8]

Second, Petitioner does not challenge the propriety of the final order of removal denying his request for asylum.  A "final order includes all matters on which validity of the final order is contingent, rather than only those determinations actually made at the hearing."[9]  A matter is contingent if the validity of the removal order must stand or fall

---

[6]See 8 U.S.C. § 1252(b)(2)(1999)(petition for review of an order of removal shall be filed with the court of appeals for the judicial circuit in which the immigration judge completed the proceedings).

[7]See 8 U.S.C. § 1252(b)(1)(1999)(a "petition for review must be filed not later than 30 days after the date of the final order of removal").

[8]See Che-Li Shen v. I.N.S., 749 F.2d 1469, 1472 (10th Cir. 1984)(circuit courts have jurisdiction over denials of adjustment requests only if they were made during removal proceedings).

[9]Chadha v. I.N.S., 462 U.S. 919, 937 (1983).

on the validity of the challenged issue or the relief sought is plainly inconsistent with the removal order.[10]

The validity of the removal order here is not contingent upon the relief Petitioner seeks.  Petitioner asks this Court only for an order directing Respondents to adjudicate his I-485 Application on the merits.  The final removal order was based on his ineligibility for asylum.  Therefore, its validity does not stand or fall on whether the CIS wrongly applied Regulation 245(c)(8) to him when it refused to adjudicate his I-485 Application.  Accordingly, the Petition is not within the scope of the final removal order and is not a *de facto* request for direct review.

Respondents assert that Petitioner is not eligible to adjust status under Section 1255(i) because he attempted to gain admission to the United States using a fraudulent visa and therefore is not admissible to the United States.[11]  Petitioner disputes this assertion.  This, however, is not a matter for the Court to determine and does not affect the Court's jurisdiction.  Rather, it is a matter for the CIS to consider as part of reviewing the merits of Petitioner's I-485 Application.

Respondents also argue that the Court lacks habeas jurisdiction over the failure to adjudicate Petitioner's I-485 Application because 8 U.S.C. § 1252 (Section 1252) mandates that "no court shall have jurisdiction to review . . . any judgment regarding the

---

[10]Ghaelian v. I.N.S., 717 F.2d 950, 952 (6th Cir. 1983)(construing Chadha as indirectly creating such tests of contingency).

[11]See 8 U.S.C. § 1182(a)(6)(C) (1999 & Supp. 2003)("Any alien who, by fraud or willfully misrepresenting a material fact, seeks to procure (or has sought to procure or has procured) a visa, other documentation, or admission into the United States or other benefit provided under this chapter is inadmissible.").  Admissibility is a requirement set forth in Section 1255(i)(2)(A).

granting of relief under section . . . 1255."[12]   Petitioner's I-485 Application is based on

Section 1255(i).   However, the denial of Petitioner's I-485 Application was not a

judgment or discretionary decision concerning Petitioner's eligibility to adjust, but a

non-discretionary determination that Petitioner was not eligible to file the application at

all.[13]

This determination was compelled by the CIS's application of Regulation

245.1(c)(8) to Petitioner, which, as discussed below, was erroneous.   District courts

have habeas jurisdiction over petitions that challenge a failure to exercise executive

discretion authorized by law where the failure involves questions of law that arise in the

context of eligibility for discretionary relief.[14]   Such jurisdiction lies where eligibility is

"'governed by specific statutory standards'" that provide "'a right to a ruling on an

applicant's eligibility,' even though the actual granting of relief [is] 'not a matter of right

under any circumstances, but rather is in all circumstances a matter of grace.'"[15]   The

Court has jurisdiction to review this pure error of law pursuant to a habeas petition.[16]

Nothing in the Illegal Immigration Reform and Immigrant Responsibility Act of 1996

---

[12]8 U.S.C. § 1252(a)(2)(B)(i) (1999).

[13]See Succar v. Ashcroft, 394 F.3d 8, 19-20 (1st Cir. 2005)(concluding that 8 U.S.C. § 1252(a)(2)(B)(i) does not eliminate judicial review of the Attorney General's refusal to consider an application made under Section 1255(a) because that refusal is not a "judgment regarding the granting of relief under section 1255[.]").

[14]St. Cyr, 533 U.S. at 307-08.

[15]Id. (quoting Jay v. Boyd, 351 U.S. 345, 353-54 (1956)).

[16]See id.; Succar, 394 F.3d at 19.

(IIRIRA), of which Section 1252 is a part, repealed habeas jurisdiction pursuant to 28

U.S.C. § 2241.[17]

Although the Court has habeas jurisdiction in this matter, part of the relief

requested by Petitioner, an order directing Respondents to adjudicate Petitioner's I-485

Application on the merits without regard to the bar of Regulation 245.1(c)(8), requires

that the Court also have mandamus jurisdiction.  Respondents assert that the Court

lacks mandamus jurisdiction because Petitioner cannot meet any of the requirements

for mandamus.  The Court disagrees.

District courts "have original jurisdiction of any action in the nature of mandamus

to compel an officer or employee of the United States or any agency thereof to perform

a duty owed to the plaintiff."[18]  "For mandamus to issue, there must be a clear right to

the relief sought, a plainly defined and peremptory duty on the part of respondent to do

the action in question, and no other adequate remedy available."[19]  In considering a

request for mandamus, even in an area generally left to an agency's discretion, a court

has a duty to measure the allegations against any "'statutory or regulatory standards

---

[17] St. Cyr, 533 U.S. at 314.  Cf. Riley v. I.N.S., 310 F.3d 1253, 1256 (10th Cir. 2002)(holding that certain provisions of IIRIRA did not strip § 2241 habeas jurisdiction because, like the section upon which Respondents rely here, 8 U.S.C. § 1252(a)(2)(B)(i), they did not contain a clear statement referencing § 2241 as required when attempting to remove federal habeas jurisdiction).

[18] 28 U.S.C. § 1361 (1993).

[19] Johnson v. Rogers, 917 F.2d 1283, 1285 (10th Cir. 1990).

delimiting the scope or manner in which [agency] discretion can be exercised.  In these situations, mandamus will lie when the standards have been ignored or violated.'"[20]

Petitioner satisfies the three requirements for mandamus.  First, Petitioner has a clear right to the relief sought, namely, that the CIS process his I-485 Application on the merits.  The refusal to process the I-485 Application was based on Regulation 245.1(c)(8)'s prohibition against status adjustments by arriving aliens in removal proceedings.[21]  As discussed below, this regulation does not apply to aliens who fall within the parameters of Section 1255(i).  Without this bar, Petitioner has a right to have his I-485 Application adjudicated on the merits.

Second, there is also a plainly defined and peremptory duty on the part of Respondents to adjudicate the I-485 Application on the merits.  Although the decision to adjust status is discretionary even if an applicant meets all of the criteria of Section 1255(i), the applicable regulation requires Respondents either to grant or to deny an application for adjustment: "The applicant shall be notified of the decision of the director and, if the application is denied, the reasons for the denial."[22]  This language plainly indicates that there is a duty to adjudicate applications for adjustment of status submitted by those eligible to apply.  Furthermore, "[a]dministrative agencies do not possess the discretion to avoid discharging the duties that Congress intended them to

---

[20]Carpet, Linoleum and Resilitent Tile Layers, Local Union No. 419, Brotherhood of Painters & Allied Trades, AFL-CIO v. Brown, 656 F.2d 564, 566 (10th Cir. 1990)(quoting Davis Assoc., Inc. v. Secretary, Dept. of Housing & Urban Devel., 498 F.2d 385, 389 & n.5 (1st Cir. 1974)).

[21]8 C.F.R. § 245.1(c)(8)(2003).

[22]8 C.F.R. § 245.2(a)(5)(2003).

perform."[23]  Here, because the reason given for refusing to adjudicate the I-485

Application on the merits (Regulation 245.1(c)(8)) does not apply, the CIS must fulfill its

duty to grant or deny the application on the merits.

Third, no other adequate remedy is available because only the CIS can

adjudicate the I-485 Application.  Respondents suggest that direct review of the BIA's

denial of Petitioner's Motion to Reopen was another available remedy.  However, as

pointed out above, the CIS did not issue its decision not to adjudicate the I-485

Application until over seven months after the denial by the BIA of the Motion to

Reopen.  Because this decision was not made within the removal proceeding,

Petitioner could not have raised the matter on direct appeal of the denial of his request

for asylum.[24]

Respondents suggest another alternate remedy, that Petitioner could request

the CIS to join in a Motion to Reopen in order to vacate the final order of removal,

presumably based on Petitioner's eligibility to apply for adjustment of status pursuant to

Section 1255(i).  Respondents then note that such relief is unlikely because Petitioner

is inadmissible due to the fraudulent visa.  However, this argument overlooks

Petitioner's assertion that he did not use a fraudulent visa, a fact issue that the Court

cannot determine in this proceeding.  This is a matter for the CIS to determine within

the context of adjudicating Petitioner's I-485 Application on the merits, the precise relief

Petitioner requests by Writ of Mandamus.

---

[23]Marathon Oil Co. v. Lujan, 937 F.2d 498, 500 (10th Cir. 1990).

[24]See Che-Li Shen, 749 F.2d at 1472.

Respondents cite several cases to support their contention that Section 1252 strips the Court's mandamus jurisdiction.[25]  Section 1252 mandates that "no court shall have jurisdiction to review . . . any judgment regarding the granting of relief under section . . . 1255."[26]  Respondents' argument presupposes that the CIS made a "judgment regarding the granting of relief" under Section 1252.  As discussed above, this is not the case.

The parties' dispute on the merits centers around the apparent conflict between statute and regulation.  Respondents contend that Regulation 245.1(c), which defines certain types of aliens who are "ineligible to apply for adjustment of status to that of lawful permanent resident alien" under Section 1255, renders Petitioner ineligible to apply for adjustment of status.[27]  Pursuant to Regulation 245.1(c)(8), ineligible aliens include "[a]ny arriving alien who is in removal proceedings pursuant to section 235(b)(1) or section 240 of the [Immigration and Nationality] Act."[28]

---

[25]McBrearty v. Perryman, 212 F.3d 985 (7th Cir. 2000); Sadowski v. I.N.S., 107 F. Supp. 2d 451 (S.D.N.Y. 2000); Diallo v. Reno, 61 F. Supp. 2d 1361 (N.D. Ga. 1999).

[26]8 U.S.C. § 1252(a)(2)(B)(i) (1999).

[27]8 U.S.C. § 1255(i) consists of two segments.  Section 1255(i)(1) contains a series of date-specific requirements related to the filing of a labor certification application and physical presence in the United States, and the payment of a fee.  Respondents do not dispute that Petitioner has satisfied all the requirements of Section 1255(i)(1).  Respondents do dispute whether Petitioner will satisfy the second segment, Section 1255(i)(2), because Petitioner's presentation of a fraudulent visa upon his arrival in the United States in 1992 renders him inadmissible.  However, as discussed above, this issue is not before the Court, but is a matter that the CIS will determine upon consideration of the I-485 Application on the merits when Petitioner has an opportunity to challenge the CIS's factual contention.

[28]8 C.F.R. § 245.1(c)(8) (2003).  Section 235(b)(1) refers to 8 U.S.C. § 1225(b)(1); section 240 refers to 8 U.S.C. § 1229a.  Petitioner's removal proceeding appears to be pursuant to the 8 U.S.C. § 1229a.

Because Petitioner was paroled into the United States, Respondents have classified him as an arriving alien who is in removal proceedings.[29]  The issue before the Court, therefore, is whether Regulation 245.1(c)(8) is applicable to aliens such as Petitioner who seek to adjust status pursuant to Section 1255(i).  The parties did not cite any case law addressing this precise issue.  However, after completion of briefing, the First Circuit decided Succar v. Ashcroft[30] as a matter of first impression in immigration law and, on the same day, a companion case, Rivera v. Ashcroft.[31]

In Succar, the petitioner was paroled into the United States and applied for adjustment of status pursuant to 8 U.S.C. § 1255(a) (Section 1255(a)).  The INS refused to adjudicate his I-485 application on the ground that Regulation 254.1(c)(8) rendered him ineligible to adjust status.  The court held that Regulation 245.1(c)(8) is "invalid as inconsistent with 8 U.S.C. § 1255(a)."[32]  The court noted that "Congress defined certain categories of aliens eligible to apply for adjustment of status, 8 U.S.C. § 1255(a), and refined the definition by specifically excluding certain aliens from eligibility.  8 U.S.C. §§ 1255(c), (e)."[33]  The court concluded that Congress had "reserved for itself the determination of whether a non-citizen should be able to apply for" adjustment of status, and that the "Attorney General cannot promulgate a

---

[29]Petitioner contests his classification as an "arriving alien."  However, a determination of whether Petitioner is or is not an arriving alien, as that term is defined by regulation (8 C.F.R. § 1.1(p)) and interpreted by case law, is not necessary to the Court's analysis.

[30]Succar v. Ashcroft, 394 F.3d 8 (1st Cir. 2005).

[31]Rivera v. Ashcroft, 294 F.3d 37 (1st Cir. 2005).

[32]Succar, 394 F.3d at 36.

[33]Id. at 24.

regulation that categorically excludes from application for adjustment of status a category of otherwise eligible aliens; this is contrary to Congressional intent."[34]

Although <u>Succar</u> concerned Section 1255(a), not Section 1255(i), its reasoning supports the Court's conclusion that Regulation 245.1(c)(8) is inconsistent with Section 1255(i).[35]  Like Section 1255(a), Section 1255(i) defines a category of aliens who, if they meet certain requirements, are eligible to apply for adjustment of status to lawful permanent resident.  This category does not exclude paroled or arriving aliens in removal proceedings.  To the contrary, it includes a category of aliens that is even broader than those defined in Section 1255(a), aliens "physically present in the United States . . . who . . . entered the United States without inspection[.]"[36]  Regulation 245.1(c)(8) creates an exception to this class of aliens by excluding from eligibility to apply under Section 1255(i) "arriving aliens who are in removal proceedings."  Regulation 245.1(c)(8), therefore, is invalid because it conflicts with Section 1255(i).

In <u>Rivera</u>, the companion case to <u>Succar</u>, the First Circuit held that the stated basis for rejecting petitioner's application under Section 1255(i), that she was ineligible

---

[34]<u>Id.</u>; <u>see</u> <u>also</u> <u>Bona v. Gonzales</u>, 425 F.3d 663, 668 (9th Cir. 2005).

[35]The Court is cognizant of the <u>Succar</u> court's notation that "Section 1255(i), unlike the other provisions governing who is eligible to apply for adjustment of status, seems to give the Attorney General some discretion over whether these aliens are even eligible to apply, as well as over the decision whether to adjust."  <u>Succar</u>, 294 F.3d at 27 n.22.  The court's statement concerned the use of the term "may" in the statute: "The Attorney General <u>may</u> accept such application only if the alien remits with such application a sum equalling [sic] $1,000 as of the date of receipt of the application[.]"  8 U.S.C. § 1255(i)(1)(1999 & Supp. 2003)(emphasis added).  However, the Court reads that provision only as precluding the Attorney General from accepting an application to adjust unless the appropriate fee is paid, not as unbridled discretion to exclude by regulation whole categories of aliens from even applying for adjustment of status.

[36]8 U.S.C. § 1255(i)(1)(1999 & Supp. 2003).

to apply under Regulation 1245.1(c)(8),[37] could not be sustained under <u>Succar</u>.[38]  The court, therefore, remanded the matter back to the BIA.  Although the court, somewhat cryptically, stated that its opinion did not reach the question of whether "adjustment of status under 8 U.S.C. § 1255(i) (as opposed to adjustment under 8 U.S.C. § 1255(a)) is not barred by the regulation[,]"[39] its reasoning supports the Court's conclusion in this case that Regulation 245.1(c)(8) does not bar an otherwise qualified alien from applying for adjustment of status under Section 1255(i).

In sum, the Court holds that it has habeas jurisdiction to review Respondents' failure to adjudicate Petitioner's I-485 Application on the merits, that it has jurisdiction to issue a writ of mandamus to compel Respondents to adjudicate Petitioner's I-485 Application on the merits, and that Regulation 245.1(c)(8) is invalid because it conflicts with the intent of Congress as expressed in Section 1255(i).  Accordingly, it is

ORDERED that Petitioner's Verified Petition For A Writ Of Habeas Corpus Pursuant To 28 U.S.C. § 2241, Petition For A Writ Of Mandamus Pursuant To 28 U.S.C. § 1361, And A Complaint For Declaratory And Injuctive [sic] Relief is granted.  It is

---

[37]  8 C.F.R. § 1245.1(c)(8) is identical to Regulation 245.1(c)(8) except that it applies to the Executive Office for Immigration Review in the Department of Justice.

[38]<u>Rivera</u>, 294 F.3d at 40.

[39]<u>Id.</u>

FURTHER ORDERED that Respondents shall adjudicate Petitioner's Application to Adjust to Permanent Resident Status (Form I-485) on its merits.

DATED at Denver, Colorado, this __13__ day of December, 2005.

BY THE COURT:

_____
ZITA L. WEINSHIENK, Senior Judge
United States District Court